IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
7:14-CR-78-BO-2

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| JUSTICE DEVON PRICE | ) |
| | ) |

This matter is before the Court on defendant Justice Price's motion to suppress all evidence seized as a result of a traffic stop conducted on January 26, 2014. [DE 216]. A hearing was held on the matter before the undersigned on April 7, 2015, in Raleigh, North Carolina. Also before the Court is a letter from defendant that the Court construes as a motion for new counsel. [DE 234]. For the reasons discussed below, defendant's motion to suppress is granted and defendant's motion for new counsel is denied without prejudice.

BACKGROUND

Mr. Price is charged in eight counts of a 28-count superseding indictment. [DE 174]. Only Count Nine, which charges Mr. Price with possession with the intent to distribute 50 grams of methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and 2, is relevant to the motion to suppress. That charge is supported by evidence seized from Mr. Price's person following a traffic stop conducted in Wilmington, North Carolina, on January 26, 2014. Mr. Price alleges that the encounter violated the Fourth Amendment to the United States Constitution in two ways: by unnecessarily prolonging the traffic stop beyond the time necessary to investigate the stop sign violation, and that the second search of his person was not supported by reasonable suspicion or any other exception to the warrant requirement.

## FACTS

Prior to January 26, 2014, Mr. Price and an individual named Victor Valladares had become targets of an investigation conducted by the Federal Bureau of Investigations (FBI), the Bureau of Alcohol Tobacco and Firearms (ATF) and the New Hanover County Sheriff's Office (NHCSO). At the hearing, Officer Parish of the Duplin County Sheriff's Office testified that on January 7, and January 22, 2014, ATF and NHCSO conducted controlled purchases of heroin from Tony Davis. On January 7, Mr. Davis retrieved heroin from a gray Nissan Altima registered to Mr. Price, and on January 22, Mr. Davis arrived with the heroin in the same car, which was driven by Mr. Price. Officers then got a warrant for a pen register which included a GPS monitor on Mr. Valladares's phone. Between January 24, 2014, and early morning on January 26, 2014, the phone traveled from Wilmington, North Carolina, to New York City, where it remained for roughly 12 hours before returning to Wilmington. Believing the phone was in a car that had traveled to New York to purchase narcotics, law enforcement planned to stop the car, a white Ford Fusion, on the morning of January 26, 2014.

Sergeant Fike of the NHCSO testified that a detective called him prior to January 26 to inform him of the ongoing investigation and request his help with the traffic stop. He then received a call early on January 26 instructing him to meet the detectives at the rendezvous point. Once in his squad car, Sergeant Fike established communication with the detectives via the NHCSO Narcotics Unit's radio channel and received periodic updates on the car's location. After the car exited the highway into the city of Wilmington, a radio update established that the car had crossed the yellow line when turning. Sergeant Fike then observed the car roll through a stop sign while turning right. The government submitted as evidence the dash camera video from Sergeant Fike's squad car.

Sergeant Fike stopped the Fusion for the traffic violations and approached the car with two other unidentified officers. Mr. Price was identified as the driver and Mr. Valladares, the passenger. Before asking for the registration, Sergeant Fike interrogated Mr. Price about his prior whereabouts and the owner of the car. Mr. Price stated he was coming from Raleigh and the car belonged to Mr. Valladares's wife. Sergeant Fike then pointed out that the car was covered in salt. Sergeant Fike testified that, at this point, Mr. Price appeared visibly nervous and his carotid artery was pulsing. While Sergeant Fike requested registration, no registration was provided by either Mr. Price or the passenger. Sergeant Fike's tone throughout the encounter was confrontational.

Mr. Price admitted he had traveled to New York to go shopping and see his daughter, after which Sergeant Fike asked for consent to search the bags in the trunk of the car, stating that he believed Mr. Price was lying. After removing Mr. Price from the car and patting him down, Sergeant Fike removed each bag from the trunk and continued to interrogate Mr. Price about his trip. After a few minutes, Sergeant Fike asked if Mr. Price would consent to a drug dog sniffing the bags. Mr. Price consented. Before the dog approached the Fusion, Sergeant Fike claimed that he got a whiff of marijuana from one of the bags and ordered his associate to detain Mr. Price and the passenger. Mr. Price was then handcuffed and remained handcuffed for the rest of the encounter. Mr. Price stated there was no marijuana in the car or the bags and requested that the dog sniff the bags.

Deputy Mills, the dog handler, did not testify at the hearing. On the video, he can be heard stating that he recognized Mr. Price from a prior encounter in which Mr. Price possessed marijuana. Sergeant Fike stated that he did not smell marijuana on Mr. Price, but instead smelled it in one of the bags. Deputy Mills ran his dog around the car and past the bags. Sergeant Fike

3

testified that he is familiar with the dog that was used, that it sits when it alerts, and that it sat in the trunk of the car. The dog did not alert on any of the bags.

Approximately seven minutes after Deputy Mills said that he recognized Mr. Price, Sergeant Fike frisked Mr. Price for a second time. The video camera did not capture this second frisk. Sergeant Fike testified that he conducted the second pat-down because Deputy Mills told him marijuana had previously been found in Mr. Price's pants. With the aid of other officers, Sergeant Fike retrieved a clear plastic bag containing 200 pills which was rolled up and stuffed in the crotch region of Mr. Price's pants. The pills were later determined to be methamphetamine. Neither marijuana nor any other drug was recovered from the car or the bags that were in the trunk.

## DISCUSSION

The Fourth Amendment to the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. The Fourth Amendment requires suppression of evidence that is the fruit of unlawful police conduct. *Wong Sun v. United States*, 371 U.S. 471, 484 (1963).

I.   Traffic Stop

"Temporary detention of individuals during the stop of an automobile by the police, even if only for a brief period" constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 809–10 (1996). Generally, "the decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred." *Id.* at 810. Because an ordinary traffic stop is "more like an investigative detention than a custodial arrest . . . the limits of police conduct in routine traffic stops" are analyzed using the standard set forth in *Terry v. Ohio*, 392 U.S. 1 (1968). *United States v.*

4

*Rusher*, 966 F.2d 868, 875 (4th Cir. 1992). The Court first must consider "whether the officer's action was justified at its inception, and [second,] whether it was reasonably related in scope to the circumstances which justified the interference in the first place." *Terry*, 392 U.S. at 20.

With regard to *Terry's* first prong, it is clear that the traffic stop in this case, at its inception, was justified. N.C.G.S. § 20–158; *see also U.S. v. Digiovanni*, 650 F.3d 498, 506–07 (4th Cir. 2011). Sergeant Fike believed the car ran the stop sign, the video clearly shows the car ran the stop sign, and Mr. Price does not contest the lawfulness of the initial stop.

Accordingly, the relevant inquiry is whether the traffic stop is appropriately limited in scope and duration. *Florida v. Royer*, 460 U.S. 491, 500 (1983) (plurality opinion). The scope of a routine traffic stop is limited. *United States v. Brugal*, 209 F.3d 353, 358 (4th Cir. 2000) (*en banc*). "If a police officer seeks to prolong a traffic stop to allow for investigation into a matter outside the scope of the initial stop, he must possess reasonable suspicion or receive the driver's consent." *Digiovanni*, 650 F.3d at 507. Where a law enforcement officer fails "to diligently pursue the purposes of the stop and embark[s] on a sustained course of investigation into the presence of drugs in a car that constitute[s] the bulk of the encounter," the officer's conduct runs afoul of the Fourth Amendment. *Id.* at 509.

Other than look at Mr. Price's license, Sergeant Fike did absolutely nothing to investigate the stop sign violation. Upon stopping the vehicle, he immediately began investigating other potential criminal activity without so much as checking the validity of Mr. Price's license. He asked Mr. Price numerous questions concerning his travel history and his apparent nervousness, while asking absolutely no questions related to the violation. He accused Mr. Price of lying, repeatedly raised his voice, and required Mr. Price to open the trunk of his car to prove that he

5

had been shopping. It is clear from Sergeant Fike's actions that he embarked upon an investigation into the presence of drugs rather than solely pursuing the purpose of the traffic stop.

Sergeant Fike's investigation was valid under the Fourth Amendment, however, if he possessed a reasonable suspicion a serious crime had been committed at the time that he began investigating the presence of drugs. *Brugal*, 203 F.3d at 358. The reasonable suspicion standard "is not readily . . . reduced to a neat set of legal rules, but, rather, entails common sense, nontechnical conceptions that deal with factual and practical considerations of everyday life on which reasonable and prudent persons, not legal technicians, act." *United States v. Foreman*, 369 F.3d 776, 781 (4th Cir. 2004). An instructing officer's reasonable suspicion can be imputed to an acting officer via the collective knowledge doctrine. *United States v. Massenberg*, 654 F.3d 480, 492 (4th Cir. 2011).

Sergeant Fike's testimony established that he was at least aware that the occupants were suspected of drug trafficking. Sergeant Fike also testified that Mr. Price acted nervous when he was pulled over, and Mr. Price initially lied about his prior whereabouts. Officer Parish's testimony established that all law enforcement personnel involved were in communication and aware of the scope of the investigation. Moreover, the officers instructing Sergeant Fike to conduct the traffic stop knew that Mr. Price was involved in two purchases of controlled substances and that the car he was driving had just returned from a suspected trip to purchase controlled substances in New York. Even if Sergeant Fike lacked reasonable suspicion, the instructing officers possessed reasonable suspicion that Mr. Price was involved in drug trafficking. Accordingly, the Court finds the combination of the collective knowledge doctrine and the facts testified to by Sergeant Fike establish that he had reasonable suspicion criminal

6

activity was afoot at the time he prolonged the traffic stop to investigate Mr. Price's suspected drug-dealing. Accordingly, the traffic stop did not run afoul of the Fourth Amendment.

II. Second Search of Defendant's Person

The touchstone of the Fourth Amendment is reasonableness. *Kentucky v. King*, 131 S.Ct. 1849, 1856 (2011); *Amaechi v. West*, 237 F.3d 356, 361 (4th Cir. 2001). The key inquiry, therefore, is whether the second pat-down, during which Sergeant Fike discovered the controlled substances giving rise to Count 9 of the indictment, was reasonable. When a defendant's motion to suppress challenges the constitutionality of a warrantless search, the government has the burden to prove by a preponderance of the evidence that the search was lawful. *United States v. Cauthen*, 669 F.Supp.2d 629, 633 (M.D.N.C. 2009) (citing *Coolidge v. New Hampshire*, 403 U.S. 443, 454–55 (1971)).

At the time of the second search, Mr. Price was handcuffed, and Sergeant Fike had already conducted a *Terry* frisk for weapons. Sergeant Fike testified that it was only after Deputy Mills informed him that he had previously found marijuana in the crotch of Mr. Price's pants did Sergeant Fike conduct the second search. Based on this evidence, the Court determines that the second search was not for officer protection, but instead was to discover evidence of a crime suspected to be afoot. The government concedes as much in its response.

The government argues that Sergeant Fike had probable cause to believe that controlled substances may be hidden on defendant's person, and he acted reasonably by patting Mr. Price down to investigate. This does not appear to fall under any exception to the Fourth Amendment's warrant requirement of which the Court is aware. Accordingly, the Court finds that the government failed to meet its burden to prove that the search was reasonable, and defendant's motion to suppress must be granted.

7

Alternatively, the Court will assume *arguendo* that the government intended to argue that the second search was a valid search incident to arrest because, at the time it was conducted, Officer Fike had probable cause to justify arrest for marijuana possession. Under the Fourth Amendment, if supported by probable cause, an officer may make a warrantless arrest of an individual in a public place. *Maryland v. Pringle*, 540 U.S. 366, 370 (2003). "Probable cause for a warrantless arrest is defined as 'facts and circumstances within the officer's knowledge that are sufficient to warrant a prudent person, or one of reasonable caution, in believing, in the circumstances shown, that the suspect has committed, is committing, or is about to commit an offense." *United States v. Coleman*, 100 F. App'x 202, 204 (4th Cir. 2004) (quoting *United States v. Gray,* 137 F.3d 765, 769 (4th Cir. 1998)). Probable cause is determined by viewing the totality of the circumstances. *Illinois v. Gates*, 462 U.S. 213, 230–31 (1983). "Where the formal arrest follow[s] quickly on the heels of the challenged search," it is not important that the search preceded the arrest rather than vice versa. *Rawlings v. Kentucky*, 448 U.S. 98, 111 (1980).

Although it is a close case, the Court is unable to conclude that the government had probable cause to arrest Mr. Price for possession of controlled substances when Sergeant Fike conducted the second pat-down. The government argues that the odor of marijuana, the alert of the drug dog, the knowledge that Mr. Price had previously hidden marijuana in crotch of his pants, and government's collective knowledge regarding ongoing drug trafficking activities provided Sergeant Fike with probable cause necessary to arrest Mr. Price for possession of controlled substances, thereby justifying the second pat-down.

The Court does not credit Sergeant Fike's testimony that he smelled marijuana. Perhaps he thought he smelled marijuana, or perhaps "the wish was father to the thought." *United States v. Gemma*, No. 12-10155-GAO, 2014 WL 1654133, *4 (D.Mass. Apr. 25, 2014). It is undisputed

8

that the drug dog did not alert on the bags that allegedly smelled of marijuana. Neither marijuana nor drug paraphernalia was ever found during the search of the car, which, per the video evidence, was extremely thorough. Moreover, it is clear that Sergeant Price was fishing for evidence of drug trafficking throughout the traffic stop. In sum, the Court does not find Sergeant Price's assertion that he smelled marijuana credible and accordingly, does not consider it in the probable cause analysis.

The question thus becomes whether the dog alert on the car, the knowledge of Mr. Price's prior criminal record, and the knowledge of the ongoing drug investigation provided Sergeant Fike with probable cause to arrest Mr. Price for possession of controlled substances. The Court finds that it did not. The dog alerted on the car, not on Mr. Price. Accordingly, the dog alert constituted probable cause to search the vehicle, not Mr. Price's person.[1] *Illinois v. Caballes*, 543 U.S. 405, 409–10 (2005). Moreover, it is unclear to what drug the dog was alerting, and no drugs were found in the car or bags prior (or subsequent) to the pat-down.

The Court, however, will consider the dog alert on the trunk in the totality of the circumstances, as required by the probable cause analysis. The Court cannot conclude that a dog alert on the trunk of the car, knowledge of Mr. Price's prior criminal behavior and knowledge that he was the subject of a drug investigation gave Sergeant Fike probable cause to arrest Mr. Price for drug possession. It is a close case, but the government has not proven by a preponderance of the evidence that a person of reasonable caution would believe that Mr. Price possessed marijuana at the time of the second search. Accordingly, the Court finds, as an alternative holding, that no probable cause existed to arrest Mr. Price for marijuana possession, therefore the search of his person was not a valid search incident to arrest.

---

[1] If narcotics had been found in the car, Sergeant Fike would have had probable cause to arrest, however no evidence has been presented that narcotics were found.

9

Mr. Price's most recent letter articulates his belief that his appointed counsel is ineffective. Accordingly, the Court construes the letter [DE 234] as a motion for new counsel. As the letter was filed before the Court granted the instant suppression motion, the Court will deny Mr. Price's request for new counsel without prejudice, rather than holding a hearing on the request. Should Mr. Price still request new counsel despite his success on the suppression motion, he can renew his request, and the Court will address it at the appropriate time.

## CONCLUSION

For the reasons set forth above, defendant's motion to suppress is GRANTED, and defendant's request for new counsel is DENIED WITHOUT PREJUDICE. Evidence obtained as a result of the second pat-down of defendant's person is to be excluded from use at trial in the government's case in chief.

SO ORDERED, this _17_ day of April 2015.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE