IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION
No. 7:14-CR-78-D-2
No. 7:21-CV-222-D

| | |
|---|---|
| JUSTICE DEVON PRICE, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) **ORDER** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

On November 22, 2021, Justice Devon Price ("Price" or "petitioner") moved to appoint counsel [D.E. 490]. On December 27, 2021, Price moved pro se for compassionate release under the First Step Act ("First Step Act"), Pub. L. No. 115-391, § 603(b), 132 Stat. 5194, 5238–41 (2018) (codified as amended at 18 U.S.C. § 3582) [D.E. 496]. On December 27, 2021, the court appointed Price counsel in order to seek compassionate release [D.E. 497]. On December 28, 2021, Price moved pro se under 28 U.S.C. § 2255 to vacate, set aside, or correct his 188-month sentence [D.E. 498]. On January 3, 2021, Price filed pro se a letter in support of his motion to vacate [D.E. 500]. On January 4, 2021, Price filed pro se a letter in support of his motion for compassionate release [D.E. 501]. On January 20, 2022, Price filed pro se a corrected motion to vacate under section 2255 [D.E. 503]. On March 21, 2022, the government moved to dismiss Price's section 2255 motion [D.E. 509]. On March 24, 2022, the court issued Price a Rule 12 letter [D.E. 511]. On March 24, 2022, Price moved pro se again to appoint counsel [D.E. 512]. On April 18, 2022, Price moved pro se for clarification [D.E. 522]. On April 25, 2022, Price responded pro se to the government's motion to dismiss Price's section 2255 motion [D.E. 523] and filed a memorandum in support [D.E.

524]. On May 17, 2022, the government responded in opposition to Price's motion for compassionate release [D.E. 527]. On May 25, 2022, Price replied pro se to the government's response [D.E. 532]. As explained below, the court denies Price's motion for compassionate release, grants the government's motion to dismiss, dismisses Price's section 2255 motions, denies as moot Price's motions to appoint counsel, and denies Price's motion for clarification.

I.

On March 7, 2016, pursuant to a written plea agreement, Price pleaded guilty to conspiracy to distribute 100 grams or more of heroin and 100 grams or more of a mixture and substance containing a detectable amount of phencycline ("PCP"). See [D.E. 384, 385]; Presentence Investigation Report ("PSR") [D.E. 394] ¶¶ 1–4. On October 12, 2016, the court held Price's sentencing hearing. See Sent. Tr. [D.E. 444]. At the hearing, the court denied Price's motion to withdraw his guilty plea, adopted the facts set forth in the PSR, and resolved Price's objections. See Sent Tr. at 4–18; Fed. R. Crim. P. 32(i)(3)(A)–(B). The court calculated Price's total offense level to be 31, his criminal history category to be VI, and his advisory guideline range to be 188 to 235 months' imprisonment. See Sent. Tr. at 17. The court then thoroughly considered all relevant factors under 18 U.S.C. § 3553(a) and sentenced Price to 188 months' imprisonment. See id. at 18–33. The court also announced that even if the court miscalculated the advisory guideline range, it would impose the same sentence as an alternative variant sentence. See id. at 34. Further, the court stated that "the sentence is the sufficient but not greater than necessary [sentence] for Mr. Price." See id.

Price appealed. See [D.E. 437]. On June 22, 2017, the United States Court of Appeals for the Fourth Circuit affirmed that Price's guilty plea was knowing and voluntary, affirmed that Price

2

waived his right to appeal, and dismissed Price's appeal. See United States v. Price, 691 F. App'x 775, 776 (4th Cir. 2017) (per curiam) (unpublished); [D.E. 455] 2.

On December 27, 2021, Price moved for compassionate relief. See [D.E. 496]. On December 28, 2021, Price moved under section 2255 to vacate, set aside, or correct his 188-month sentence. See [D.E. 498]. The government opposes Price's motion for compassionate release and moved to dismiss Price's section 2255 motions. See [D.E. 509, 527].

II.

Under 18 U.S.C. § 3582(c)(1)(A), a court may reduce a defendant's term of imprisonment if (1) "extraordinary and compelling reasons warrant such a reduction" or (2) "the defendant is at least 70 years of age, has served at least 30 years in prison," and the Director of the Bureau of Prisons ("BOP") has determined the defendant is not a danger to another person or the community. 18 U.S.C. § 3582(c)(1)(A)(i)–(ii); see United States v. Hargrove, 30 F.4th 189, 194 (4th Cir. 2022); United States v. High, 997 F.3d 181, 185–86 (4th Cir. 2021); United States v. Kibble, 992 F.3d 326, 330 (4th Cir.) (per curiam), cert. denied, 142 S. Ct. 383 (2021); United States v. McCoy, 981 F.3d 271, 275–77 (4th Cir. 2020). A section 3582(c)(1)(A) sentence reduction must comport with the 18 U.S.C. § 3553(a) factors and applicable Sentencing Commission policy statements. See 18 U.S.C. § 3582(c)(1)(A); Hargrove, 30 F.4th at 194.

Before filing a motion under 18 U.S.C. § 3582(c)(1)(A), a defendant must "fully exhaust[] all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier[.]" 18 U.S.C. § 3582(c)(1)(A). This requirement is nonjurisdictional, and the government waives a defense based on section 3582(c)(1)(A)'s exhaustion

3

requirements if the government does not timely raise it. See United States v. Muhammad, 16 F.4th 126, 129–30 (4th Cir. 2021).

When considering a defendant's compassionate release motion, the court determines whether extraordinary and compelling circumstances exist and whether, in the court's discretion, those circumstances warrant relief in light of relevant factors in 18 U.S.C. § 3553(a) and applicable Sentencing Commission policy statements. See Hargrove, 30 F.4th at 194–95; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–32. In evaluating the section 3553(a) factors, the court considers, inter alia, the nature and circumstances of the offense, the history and characteristics of the defendant, the defendant's post-sentencing conduct, the need to deter criminal behavior, the need to promote respect for the law, and the need to protect the public. See 18 U.S.C. § 3553(a); Chavez-Meza v. United States, 138 S. Ct. 1959, 1966–68 (2018); Pepper v. United States, 562 U.S. 476, 480–81 (2011); High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32; United States v. McDonald, 986 F.3d 402, 412 (4th Cir. 2021); United States v. Martin, 916 F.3d 389, 398 (4th Cir. 2019). Although a court considers a defendant's post-sentencing conduct, rehabilitation alone is not an extraordinary and compelling reason. See 28 U.S.C. § 994(t); U.S.S.G. § 1B1.13, cmt. n.3; McCoy, 981 F.3d at 286 n.9.

No Sentencing Commission policy statement currently applies to a defendant's compassionate release motion. See Hargrove, 30 F.4th at 194; High, 997 F.3d at 186; Kibble, 992 F.3d at 330–31; McCoy, 981 F.3d at 281–82. U.S.S.G. § 1B1.13 is a policy statement that applies to compassionate release motions filed by the BOP Director. Nonetheless, section 1B1.13 "remains helpful guidance even when motions are filed by defendants." McCoy, 981 F.3d at 282 n.7; see Hargrove, 30 F.4th at 194. Application Note 1 of U.S.S.G. § 1B1.13 lists several extraordinary and compelling circumstances, including (A) a defendant's serious medical condition, (B) a defendant's

4

age, when coupled with serious physical or mental deterioration due to age and having served 10 years or 75 percent of his or her sentence, (C) certain family circumstances in which a defendant's minor children, incapacitated spouse, or registered partner would otherwise have no caregiver, or (D) any other extraordinary and compelling reason. U.S.S.G. § 1B1.13, cmt. n.1. "[T]he fact that an extraordinary and compelling reason reasonably could have been known or anticipated by the sentencing court does not preclude [its] consideration for a reduction." Id. § 1B1.13, cmt. n.2.

To the extent Price seeks to raise claims that he should have raised on direct appeal or under 28 U.S.C. § 2255, such as claims related to any potential sentencing error, the court rejects the arguments but assumes without deciding that they qualify as extraordinary and compelling circumstances. See [D.E. 496] 2–6, 9–10; [D.E. 524] 4–9; [D.E. 532] 2–5; United States v. McCoy, 981 F.3d 271, 287 (4th Cir. 2020) ("[T]he very purpose of [section] 3582(c)(1)(A) is to provide a 'safety valve' that allows for sentence reductions when there is not a specific statute that already affords relief...."); United States v. Handerhan, 789 F. App'x 924, 926 (3d Cir. 2019) (per curiam) (unpublished) ("[Section] 3582(c)(1)(A) provides a mechanism to seek a reduction in the term of a sentence, not to challenge its validity."); United States v. Shull, No. 1:04-cr-18, 2022 WL 179141, at *3 (W.D.N.C. Jan. 19, 2022) (unpublished); United States v. Ferguson, No. 3:04-cr-13-01, 2021 WL 1701918, at *4 (E.D. Va. Apr. 29, 2021) (unpublished) ("The compassionate release statute allows the court to consider extraordinary and compelling reasons warranting compassionate release, but it does not replace the established mechanism for challenging the validity of a sentence. Nor does it allow the defendant to make arguments that were, or could have been, raised in direct appeal or collateral review.").

On November 29, 2021, Price applied to his warden for compassionate release. See [D.E. 496] 11; [D.E. 524-1]. On December 14, 2021, the warden denied Price's application. See [D.E.

5

524-1]. The government invokes section 3582(c)(1)(A)'s threshold exhaustion requirements. [D.E. 527] 9–12. Nonetheless, the court addresses Price's motion on the merits. See Muhammad, 16 F.4th at 130.

In support of his motion for compassionate release, Price cites the COVID-19 pandemic, his age, his health and mental health conditions, his rehabilitation efforts, his release plan, his family history, his desire to care for his daughter, and that he would not be sentenced as a career offender if sentenced today for his conspiracy conviction. See [D.E. 496] 2–21; [D.E. 524] 4–9; [D.E. 532] 2–5; United States v. Norman, 935 F.3d 232, 239 (4th Cir. 2019).

Under the "medical condition of the defendant" policy statement, a defendant may qualify for compassionate release if the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13 cmt. n.1(A)(ii). Price does not argue that COVID-19 presents an extraordinary and compelling risk, and his motion states that he is not vaccinated but is in the process of getting vaccinated. See [D.E. 496] 7–8. The court, however, addresses the "medical condition of the defendant" policy statement and notes that whether vaccinated or not, the vaccine provides or would provide protection for Price. See, e.g., United States v. Jacques, No. 20-3276, 2022 WL 894695, at *2 (2d Cir. Mar. 28, 2022) (unpublished); United States v. Scalea, No. 21-2631, 2022 WL 795425, at *1 (3d Cir. Mar. 15, 2022) (unpublished) (noting that although "vaccination does not rule out reinfection . . . this does not diminish that vaccination mitigates the risk of COVID-19 complications"); United States v. Shettler, No. 21-10484, 2022 WL 620311, at *4 (11th Cir. Mar. 3, 2022) (per curiam) (unpublished); United States v. Ibarra, No. 21-10255, 2022 WL 229198, at *1 (9th Cir. Jan. 25, 2022) (unpublished); Garrett v. Murphy, 17 F.4th 419, 433 & n.7 (3d Cir. 2021);

6

United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021) ("And following full vaccination, it is now well understood, both the likelihood of contracting COVID-19 and the associated risks should one contract the virus are significantly reduced" so that "an inmate largely faces the same risk from COVID-19 as those who are not incarcerated."). And the wide availability of COVID-19 vaccines greatly diminishes the risk to Price from COVID-19 whether he is in prison or not. See, e.g., Scalea, 2022 WL 795425, at *1; Ibarra, 2022 WL 229198, at *1; Lemons, 15 F.4th at 751; Hald, 8 F.4th at 936 n.2; Broadfield, 5 F.4th at 803; Baeza-Vargas, 532 F. Supp. 3d at 843–46.

Price has not disclosed to the court any religious or medical reason why he cannot receive a COVID-19 vaccine. "[A] prisoner who remains at elevated risk because he has declined to be vaccinated cannot plausibly characterize that risk as an 'extraordinary and compelling' justification for release. The risk is self-incurred." Broadfield, 5 F.4th at 803; see also United States v. Thomas, No. 21-1645, 2022 WL 296594, at *2 (3d Cir. Feb. 1, 2022) (unpublished) ("District courts routinely deny compassionate release to inmates who refuse the COVID-19 vaccine because they have voluntarily failed to mitigate the very health concerns they identify in support of an early release."); United States v. Kennedy, No. 21-2675, 2022 WL 43187, at *2 (6th Cir. Jan. 5, 2022) (unpublished) ("But these [health] risks can be significantly ameliorated by vaccination, and the district court correctly explained that defendants may not perpetuate their own extraordinary and compelling circumstances for compassionate release by declining the Bureau of Prison's attempt to protect them." (cleaned up)); United States v. Church, No. 21-1840, 2021 WL 5632062, at *2 (3d Cir. Dec. 1, 2021) (per curiam) (unpublished) ("We agree that [defendant's] unexplained refusal to accept a COVID-19 vaccination when offered negates his otherwise compelling medical reasons for release" (quotation omitted)); Hald, 8 F.4th at 936 n.2 (noting "there is certainly room for doubt" that being fully vaccinated or being offered a vaccine "would support a finding of 'extraordinary and

7

compelling reasons'" justifying compassionate release), cert. denied, 142 S. Ct. 2742 (2022); Broadfield, 5 F.4th at 803 ("[F]or the vast majority of prisoners, the availability of a vaccine makes it impossible to conclude that the risk of COVID-19 is an 'extraordinary and compelling' reason for immediate release."); Baeza-Vargas, 532 F. Supp. 3d at 843–46 (collecting cases showing the "growing consensus" of district courts that have ruled that an inmate receiving a COVID-19 vaccine "weighs against a finding of extraordinary and compelling circumstances"); cf. United States v. Osman, No. 21-7150, 2022 WL 485183, at *1 n.2 (4th Cir. Feb. 17, 2022) (per curiam) (unpublished); United States v. Petway, No. 21-6488, 2022 WL 168577, at *2 (4th Cir. Jan. 19, 2022) (per curiam) (unpublished).

Price does not otherwise allege that the BOP is not treating and monitoring his medical conditions. And arguments based on generalizations about the spread of COVID-19 in prison have considerably less force given the wide availability of COVID-19 vaccines, the current conditions at USP Pollock where Price is incarcerated,[1] and BOP's extensive efforts to control and contain COVID-19. See Bureau of Prisons, BOP's COVID-19 Response, https://www.bop.gov/coronavirus/overview.jsp#bop_covid-19_response (last visited Oct. 24, 2022); cf. United States v. Lemons, 15 F.4th 747, 751 (6th Cir. 2021). Moreover, as discussed, the wide availability of COVID-19 vaccines for others means that Price "largely faces the same risk from COVID-19 as those who are not incarcerated." Lemons, 15 F.4th at 751. Furthermore, Price presents no evidence that he cannot provide self-care. Accordingly, reducing Price's sentence does not comport with application note 1(A). See 18 U.S.C. § 3582(c)(1)(A).

---

[1] As of October 21, 2022, USP Pollock is reporting no inmate positives and two staff positives for COVID-19. See https://www.bop.gov/coronavirus (last visited Oct. 24, 2022).

Under the "family circumstances" policy statement, extraordinary and compelling circumstances may exist because of "(i) [t]he death or incapacitation of the caregiver of the defendant's minor child or minor children" or "(ii) [t]he incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner." U.S.S.G. § 1B1.13 cmt. n.1(C). Price does not argue that his daughter's mother is incapacitated or that she is the only available caregiver. See [D.E. 496] 18. Price, however, provides information that he has been able to assist his daughter while incarcerated. See id.; [D.E. 496-1] 7–11. Thus, Price's family situation does not fall within the "family circumstances" policy statement. Nonetheless, the court considers Price's family circumstances under the "other reasons" policy statement.

The court assumes without deciding that the COVID-19 pandemic and Price's age, health and mental health conditions, rehabilitation efforts, release plan, family history, desire to care for his daughter, and the change in the law concerning Price's career offender status[2] constitute extraordinary and compelling reasons under the "other reasons" policy statement and section 3582(c)(1)(A). Cf. United States v. Raia, 954 F.3d 594, 597 (3d Cir. 2020) ("[T]he mere existence of COVID-19 in society and the possibility that it may spread to a particular prison alone cannot independently justify compassionate release, especially considering BOP's statutory role, and its extensive and professional efforts to curtail the virus's spread."). However, the section 3553(a) factors counsel against reducing Price's sentence. See Hargrove, 30 F.4th at 194–95, 198–200; High, 997 F.3d at 186; Kibble, 992 F.3d at 331–32.

---

[2] If sentenced today, Price's advisory guideline range would be 120 to 150 months' imprisonment based on a total offense level of 27 and a criminal history category of V. See [D.E. 524] 6; PSR ¶¶ 40, 61–67, 70–71.

9

Price is 32 years old and is incarcerated for conspiracy to distribute 100 grams or more of heroin and 100 grams or more of a mixture and substance containing a detectable amount of PCP in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B). See PSR ¶¶ 1–4. Price is a Bloods gang member responsible for distributing 234.6 grams of heroin and 100 grams of PCP between November 2013 and September 2014. See id. ¶¶ 14–25. As part of his drug dealing, Price and his co-conspirators threatened to kill a rival drug dealer. See id. ¶ 25. Moreover, Price is a violent recidivist drug dealer with criminal history dating back to 2008. See id. ¶¶ 31–37. Price's extensive criminal history includes possession of a handgun by a minor, assault with a deadly weapon on a government official, fleeing and eluding arrest with a motor vehicle involving three aggravating factors, possession with intent to manufacture, sell, and deliver cocaine (three counts), possession with intent to manufacture, sell, and deliver heroin (three counts), possession of a controlled substance in jail, and possession with intent to sell and deliver PCP. See id.

Price has taken some positive steps while federally incarcerated by taking educational classes and researching employment opportunities. See [D.E. 496-1] 14–49. But Price has committed several serious infractions during his current federal confinement, including possessing a hazardous tool on two occasions, possessing a non-hazardous tool, and being insolent to staff members. See [D.E. 527-1].

The court must balance Price's mixed record in federal custody with his serious criminal conduct, his violent criminal history, the need to punish him, the need to promote respect for the law, the need to protect society, and the need to deter others. Cf. Concepcion v. United States, 142 S. Ct. 2389, 2404–05 (2022); Pepper, 562 U.S. at 480–81; United States v. Roane, ___ F.4th ___, ___, Nos. 20-14 & 20-16, 2022 WL 10217083, at *8–9 (4th Cir. Oct. 18, 2022); High, 997 F.3d at 187–91; McDonald, 986 F.3d at 412; Martin, 916 F.3d at 398. The court also has considered Price's

10

potential exposure to COVID-19, his age, his health and mental health conditions, his rehabilitation efforts, his release plan, his family history, his desire to help care for his daughter, and his new advisory guideline range if resentenced today. Having considered the entire record, the extensive steps that the BOP has taken to address COVID-19, the section 3553(a) factors, Price's arguments, the government's persuasive response, the need to punish Price for his serious criminal behavior, to incapacitate Price, to promote respect for the law, to deter others, and to protect society, the court denies Price's motion for compassionate release. See, e.g., Concepcion, 142 S. Ct. at 2404–05; Chavez-Meza, 138 S. Ct. at 1966–68; Pepper, 562 U.S. at 480–81; Roane, ___ F.4th at ___, 2022 WL 10217083, at *8–9; Hargrove, 30 F.4th at 198–200; High, 997 F.3d at 187–91; Kibble, 992 F.3d at 331–32.

III.

Price asserts three claims in his section 2255 motions: (1) his career offender designation is now improper; (2) there is a sentencing disparity among co-defendants with like conduct; and (3) there was no legal finding of a drug amount in his case. See [D.E. 498] 1–4; [D.E. 500, 503]. Price also seeks equitable tolling for his untimely section 2255 motions. See [D.E. 498] 3. The government responds that Price's section 2255 motions are untimely, equitable tolling does not apply, and Price waived his right to appeal or collaterally attack his conviction and the limited exceptions to that waiver do not apply. See [D.E. 509] 1–4.

A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for "failure to state a claim upon which relief can be granted" tests a complaint's legal and factual sufficiency. See Ashcroft v. Iqbal, 556 U.S. 662, 677–78 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–63, 570 (2007); Coleman v. Md. Court of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 566 U.S. 30 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); accord Erickson v.

11

Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). In considering a motion to dismiss, a court need not accept a complaint's legal conclusions. See, e.g., Iqbal, 556 U.S. at 678. Similarly, a court "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–79. Moreover, a court may take judicial notice of public records without converting a motion to dismiss into a motion for summary judgment. See, e.g., Fed. R. Evid. 201(d); Tellabs, Inc. v. Makor Issues & Rts., Ltd., 551 U.S. 308, 322 (2007); Philips v. Pitt Cnty. Mem'l Hosp., 572 F.3d 176, 180 (4th Cir. 2009). In reviewing a section 2255 motion, the court is not limited to the motion itself. The court may consider "the files and records of the case." 28 U.S.C. § 2255(b); see United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). Likewise, a court may rely on its own familiarity with the case. See, e.g., Blackledge v. Allison, 431 U.S. 63, 74 n.4 (1977); United States v. Dyess, 730 F.3d 354, 359–60 (4th Cir. 2013).

Price's section 2255 motions are untimely. See 28 U.S.C. § 2255(f). On June 22, 2017, Price's conviction became final. See Price, 691 F. App'x at 776; [D.E. 455] 2. Price, however, waited until more than three years later, December 28, 2021, at the earliest, to file his section 2255 motions. See [D.E. 521] 1. Moreover, Price has not plausibly alleged that any governmental action prevented him from timely filing his section 2255 motions, that his section 2255 motions are based on a relevant right newly recognized by the Supreme Court, or that his section 2255 motions are based on facts that he could not have discovered with due diligence. See 28 U.S.C. § 2255(f); Clay v. United States, 537 U.S. 522, 525 (2003); United States v. Sosa, 364 F.3d 507, 509 (4th Cir. 2004). Accordingly, Price's section 2255 motions are untimely.

Alternatively, the post-conviction waiver in Price's plea agreement bars Price's claims. In the waiver, Price agreed

12

> [t]o waive knowingly and expressly all rights, conferred by 18 U.S.C. § 3742, to appeal the conviction and whatever sentence is imposed on any ground, including any issues that relate to the establishment of the advisory Guideline range, reserving only the right to appeal from a sentence in excess of the applicable advisory Guideline range that is established at sentencing, and further to waive all right to contest the conviction or the sentence in any post-conviction proceeding, including one pursuant to 28 U.S.C. § 2255, excepting an appeal or motion based upon grounds of ineffective assistance of counsel or prosecutorial misconduct not known to the Defendant at the time of the Defendant's guilty plea. The foregoing appeal waiver does not constitute or trigger a waiver by the United States of any of its rights to appeal provided by law.

Plea Agr. [D.E. 385] ¶ 2(b). In light of Price's Rule 11 proceeding, the waiver is enforceable. See Rule 11 Tr. [D.E. 443] 15–28; United States v. Copeland, 707 F.3d 522, 528–30 (4th Cir. 2013); United States v. Davis, 689 F.3d 349, 354–55 (4th Cir. 2012) (per curiam); United States v. Thornsbury, 670 F.3d 532, 537 (4th Cir. 2012); United States v. Blick, 408 F.3d 162, 168 (4th Cir. 2005). Price's claims fall within the waiver. Accordingly, the waiver bars Price's claims.

Alternatively, Price procedurally defaulted his sentencing disparity and legal finding of drug amount claims by failing to raise them on direct appeal. Thus, the general rule of procedural default bars Price from presenting these claims under section 2255. See, e.g., Massaro v. United States, 538 U.S. 500, 504 (2003); Bousley v. United States, 523 U.S. 614, 621 (1998); United States v. Fugit, 703 F.3d 248, 253 (4th Cir. 2012); United States v. Sanders, 247 F.3d 139, 144 (4th Cir. 2001). Furthermore, Price has not plausibly alleged "actual innocence" or "cause and prejudice" resulting from the alleged error about which he now complains. See Bousley, 523 U.S. at 622–24; Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982); United States v. Pettiford, 612 F.3d 270, 280–85 (4th Cir. 2010); Sanders, 247 F.3d at 144; United States v. Mikalajunas, 186 F.3d 490, 492–95 (4th Cir. 1999). Thus, these claims fails.

After reviewing the claims presented in Price's motion, the court finds that reasonable jurists would not find the court's treatment of Price's claims debatable or wrong and that the claims do not

13

deserve encouragement to proceed any further. Accordingly, the court denies a certificate of appealability. See 28 U.S.C. § 2253(c); Miller-El v. Cockrell, 537 U.S. 322, 336–38 (2003); Slack v. McDaniel, 529 U.S. 473, 483–84 (2000).

IV.

In sum, the court DENIES petitioner's motion for compassionate release [D.E. 496], GRANTS respondent's motion to dismiss [D.E. 509], DISMISSES AS UNTIMELY petitioner's section 2255 motions [D.E. 498, 503], DISMISSES AS MOOT petitioner's motions to appoint counsel [D.E. 490, 512], DENIES petitioner's motion for clarification [D.E. 522], and DENIES a certificate of appealability. The clerk shall close the case.

SO ORDERED. This 14 day of October, 2022.

JAMES C. DEVER III
United States District Judge